OPINION
{¶ 1} Defendant-appellant, Bruce Wightman, appeals his conviction in the Fayette County Court of Common Pleas for kidnapping with the purpose of engaging in sexual activity.
 {¶ 2} In June 2006, appellant was indicted on one count of kidnapping with the purpose of engaging in sexual activity in violation of R.C.2905.01(A)(4). A jury trial revealed the following facts: *Page 2 
 {¶ 3} On the morning of May 29, 2006, the victim, who was 11 years old at the time, ran into appellant near her baby-sitter's house and asked appellant if his daughter was home. Appellant replied she was, and the victim ran to appellant's house. As she was looking for appellant's daughter throughout the house, appellant asked the victim if she had started "growing hair on [her] pussy." When the victim replied "no," appellant looked at her and said "good because we're going to have fun." Appellant then dove at the victim and tackled her. The victim unsuccessfully tried to get away from him, all the while screaming. After appellant "got [her] down," he told her he would kill her if she did not "shut up." Appellant then tied the victim's wrists with zip ties, tied her wrists together and to a piano with a robe tie, and duct taped the victim's mouth. At that point, the victim was on her back and appellant was sitting on her lap in a straddle position. Appellant started lifting up her shirt but stopped, stating he did not want to do that to her.
 {¶ 4} Appellant subsequently cut the zip ties, the robe tie, and the duct tape. He tried to remove the marks left on the victim's wrists by having her wash her hands and wrists. Appellant gave the victim $9 and told her she could keep the money if she did not tell anybody what had happened. Several minutes later, appellant allowed the victim to leave. The whole incident lasted 30 to 40 minutes. The victim later told the police that before releasing her, appellant told her that sometimes men have urges to have sex.
 {¶ 5} On October 8, 2006, a jury found appellant guilty as charged. Appellant was sentenced to 11 years in prison and adjudicated a sexual predator. Appellant subsequently filed a motion for a new trial which was overruled by the trial court. This appeal follows in which appellant raises four assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO BEING SHACKLED IN FRONT OF THE JURY." *Page 3 
 {¶ 8} Appellant argues that because (1) he was required to wear shackles during the trial, (2) the trial court did not address whether the jury would see the shackles upon entering and exiting the courtroom, and (3) no reason was ever provided as to why the shackles were necessary at trial, "the jury could have been prejudiced against [appellant], and a new trial is necessary." We disagree.
 {¶ 9} It is well-established that "no one should be tried while shackled, absent unusual circumstances." State v. Kidder (1987),32 Ohio St.3d 279, 285. However, a defendant may be shackled when there is danger of violence or escape. State v. Woodards (1966), 6 Ohio St.2d 14,23; State v. Murphy, Butler App. No. CA2006-06-143, 2007-Ohio-4535. The trial court is in the best position to consider the defendant's conduct both inside and outside the courtroom. Murphy at ¶ 24. The need to prevent violence or escape must be articulated on the record and specific to appellant's conduct surrounding this particular trial. Id., citing Deck v. Missouri (2005), 544 U.S. 622, 632-633, 125 S.Ct. 2007. The decision to impose shackles is left to the sound discretion of the trial court. Woodards at 23.
 {¶ 10} The record shows that prior to voir dire, the trial court indicated to the parties that unless and until he would testify, appellant would remain in shackles and that the defense table (as well as the state's table) would be draped with "black curtains" so that the shackles would not be seen. Appellant objected on the grounds that (1) he had no prior felony record, (2) he did not seem to present a risk of escape, and (3) he could inadvertently expose the existence of the metal shackles through forgetfulness. The trial court noted the objection but ordered that appellant wear shackles during the trial. The trial court stated that it was plain that the jurors could not see the shackles unless appellant exposed them to the jurors; admonished appellant not to expose the shackles to the jury; and stated appellant would not be moved away from his seat in the presence of the jury.
 {¶ 11} At trial, appellant did not testify. At the end of the trial, appellant renewed his *Page 4 
objection to the shackles on the grounds that during the impaneling of the jury and whenever the jury entered and exited the courtroom, the jury walked behind appellant; thus, the shackles "would have been visible through the chair" whenever appellant was required to stand up. The trial court overruled the objection, stating: appellant "[has] responded appropriately under the circumstances, has not made an issue of the fact that his legs are shackled. He has remained behind the curtain and I have not noticed * * * any unusual action on the part of the jurors as they leave or enter the room * * * with respect to the area of his ankles."
 {¶ 12} The record before us does not show that the trial court heard evidence to justify the use of the shackles, and the trial court did not state its reasons for ordering appellant to wear them. We find that the trial court erred by not stating on the record, based upon facts in the record, the reasons it believed that shackling appellant was necessary. Nonetheless, we decline to reverse appellant's conviction because of the shackling. The trial court took care to prevent the jury from seeing the shackles. There is no evidence in the record indicating that the jury could see, saw, or had any knowledge of the shackles worn by appellant. Nor is there evidence that the shackles were visible to the jury, or that if the jurors saw them, they were swayed in their decision. The record does not show that the shackles caused appellant any nervousness or other psychological distress, or inhibited his ability to consult with his attorney or assist in his defense.
 {¶ 13} Absent any evidence in the record that the shackles prejudiced appellant or prevented him from obtaining a fair trial, we find that the trial court did not err by overruling appellant's objection to being shackled. See State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404;United States v. Orris (C.A.6, 2004), 86 Fed.Appx. 82, 2004 WL 68534. Appellant's first assignment of error is overruled. *Page 5 
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY ON THE OFFENSE OF UNLAWFUL RESTRAINT."
 {¶ 16} Appellant was convicted of kidnapping, in violation of R.C.2905.01(A)(4), which states: "No person, by force, threat, or deception, or in the case of a victim under the age of thirteen * * *, by any means, shall * * * restrain the liberty of the other person [t]o engage in sexual activity, as defined in [R.C] 2907.01, with the victim against the victim's will." R.C. 2905.03, in turn, defines "unlawful restraint" as: "No person, without privilege to do so, shall knowingly restrain another of his liberty." Unlawful restraint is a lesser included offense of kidnapping. State v. McCabe (Dec. 15, 1997), Fayette App. No. CA97-04-010, at 7.
 {¶ 17} A jury instruction on a lesser included offense is required only where the evidence at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, 216, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89. That is not the case here.
 {¶ 18} Upon thoroughly reviewing the evidence, we find that no reasonable jury could have acquitted appellant of kidnapping, i.e., using any means to restrain the victim's liberty for the purpose of engaging in sexual activity with her against her will. Appellant's comments to the victim and his action of beginning to lift her shirt while straddling her clearly showed his intention to engage in sexual activity with the victim. "R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity, not that sexual activity actually take place." State v.Davis, Slip Opinion No. 2008-Ohio-2, ¶ 196 (emphasis sic); State v.Fisher (Nov. 24, 1999), Cuyahoga App. No. 75222.
 {¶ 19} We therefore find that a jury instruction on unlawful restraint as a lesser included offense of kidnapping was not supported by the evidence and was properly refused by the trial court. Appellant's second assignment of error is overruled. *Page 6 
 {¶ 20} Assignment of Error No. 3:
 {¶ 21} "THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO PRESENT EVIDENCE OF OTHER ACTS."
 {¶ 22} At trial, over appellant's objections, the state presented the testimony of two witnesses regarding incidents involving appellant. The first witness tried to testify about a 2001 incident with appellant when she was 13 years old, but was so upset she was unable to finish her testimony. The trial court released her and instructed the jury to disregard anything she had said as if she had never appeared. The second witness was appellant's niece who testified about a 2003 incident when she was 16 years old. On appeal, appellant argues that because there was no evidence of sexual activity in these prior incidents, the incidents were improperly admitted to prove intent to engage in sexual activity in the case at bar. Because the trial court instructed the jury to disregard the short and incomplete testimony of the first witness, and because a jury is presumed to follow instructions given by a trial court, see State v. Loza, 71 Ohio St.3d 61, 1994-Ohio-409, we will only address the testimony by appellant's niece.
 {¶ 23} A trial court has broad discretion in the admission and the exclusion of evidence. See State v. Martin, Butler App. No. CA2007-01-022, 2007-Ohio-7073. Thus, an appellate court confines its inquiry to a determination of whether the trial court acted unreasonably, arbitrarily, or unconscionably in the admission or exclusion of evidence. State v. Barnes, 94 Ohio St.3d 21, 23,2002-Ohio-68.
 {¶ 24} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} R.C. 2945.59 states: "In any criminal case in which the defendant's motive or *Page 7 
intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 26} Neither R.C. 2945.59 nor Evid.R. 404(B) "requires that the other act be `like' or `similar' to the crime charged, as long as the prior act tends to show one of the enumerated factors." State v.Crotts, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 19, citing State v.Shedrick (1991), 61 Ohio St.3d 331. Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they are both strictly construed against allowing the state to submit "other acts" evidence. State v. Goines
(1996), 111 Ohio App.3d 840, 844; State v. Siney, Warren App. No. CA2004-04-044, 2005-Ohio-1081. However, if (1) an enumerated matter, such as intent, identity, or absence of mistake or accident, is a material issue at trial, and (2) the other acts evidence tends to show that matter by substantial proof, then the evidence of the other acts is admissible for that limited purpose. See State v. Broom (1988),40 Ohio St.3d 277, 281-282.
 {¶ 27} Appellant's niece testified that one day in May 2003, while conversing with appellant about her day, appellant asked her if she was a virgin. Appellant then engaged in a sexual conversation with her until he left her house and her parents came home. The following day, when appellant was back at her house (to work on the roof), a similar situation occurred. Appellant hollered for her to come to her bedroom, where he was playing a pornographic videotape on her television, and instructed her to watch the tape, as he would be right back. The niece declined to watch the tape and went to the living room. Appellant hollered for her again. As she was approaching her bedroom, appellant came out of her *Page 8 
bathroom, picked her up, threw her on her bed, and got on top of her. The niece testified that at that point, she was on her back and that appellant was on top of her holding her hands down. The niece tried to get up but appellant threw her back down. While screaming, the niece managed to get up. Appellant got up, stared at her, and said "oh my god, I'm so sorry." The niece ran away.
 {¶ 28} At the conclusion of the niece's testimony, and again during jury instructions, the trial court instructed the jury to consider her testimony "only for the purpose of deciding whether it proves [appellant's] intent or purpose of engaging in sexual activity with [the victim] against her will [in the case at bar]."
 {¶ 29} In light of the fact that R.C. 2905.01(A)(4) does not require that sexual activity actually take place, we find that the niece's testimony, which described a prior incident which was very similar to the incident between appellant and the victim, shows evidence of appellant's intent to engage in sexual activity with the victim against her will. Although three years separate the two incidents, given the strong similarities between the two incidents, we find that the three-year span does not warrant reversal under an abuse of discretion standard. See State v. Morris (May 5, 1998), Franklin App. No. 97APA07-897. The testimony was therefore properly admitted to prove appellant's intent to engage in sexual activity with the victim against her will. Accordingly, we find that the trial court did not abuse its discretion by admitting evidence of appellant's prior incident with his niece, as it falls within the requirements of R.C. 2945.59 and Evid.R. 404(B). Appellant's third assignment of error is overruled.
 {¶ 30} Assignment of Error No. 4:
 {¶ 31} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S CRIMINAL RULE MOTION 29 BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENT OF INTENT." *Page 9 
 {¶ 32} A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based upon the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational fact-finder could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact. Dennis, 79 Ohio St.3d at 430.
 {¶ 33} Appellant argues that it was error for the trial court to deny his Crim.R. 29(A) motion because there was insufficient evidence he intended to engage in sexual activity with the victim. We disagree. Kidnapping under R.C. 2905.01(A)(4) is complete when a person removes another or restrains the other's liberty for the purpose of engaging in sexual activity. Fisher, Cuyahoga App. No. 75222, 1999 WL 1068064, at *5. As stated earlier, R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity, not that sexual activity actually take place. Davis, Slip Opinion No. 2008-Ohio-2, ¶ 196, citing State v. Powell (1990), 49 Ohio St .3d 255.
 {¶ 34} At trial, the victim testified that as she was looking for appellant's daughter in appellant's house, appellant asked her if she had started "growing hair on [her] pussy." When the victim replied "no," appellant looked her at her and said "good because we're going to have fun." Appellant then tackled the victim who tried to get away from him, all the while screaming. When appellant "got [her] down," he told her he would kill her if she did not "shut up." Appellant then duct taped the victim's mouth, and tied her wrists together and to a piano. At that point, the victim was on her back and appellant was sitting on her lap in a straddle position. Appellant started lifting up her shirt but stopped, stating he did not want to do that to her. Later, before releasing her, appellant told her how sometimes men have urges to have sex. *Page 10 
 {¶ 35} Although appellant never engaged in sexual activity with the victim, these facts support a finding that appellant restrained the victim's liberty for the purpose of engaging in sexual activity with her against her will. Accordingly, we find that a reasonable fact-finder, when viewing these facts in a light most favorable to the state, could have found the element of intent under R.C. 2905.01(A)(4) proven beyond a reasonable doubt. The trial court therefore properly denied appellant's Crim.R. 29(A) motion. Appellant's fourth assignment of error is overruled.
 {¶ 36} Judgment affirmed.
 WALSH and POWELL, JJ., concur. *Page 1