# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97742

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LEROY SPOON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-553134

**BEFORE:** Boyle, P.J., Sweeney, J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 6, 2012

[Cite as *State v. Spoon*, 2012-Ohio-4052.]

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio   44145


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Lauren Bell
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Leroy Spoon, appeals his conviction for robbery, raising the following three assignments of error:

Assignment of Error One

The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of robbery.

Assignment of Error Two

The appellant's conviction for robbery was against the manifest weight of the evidence.

Assignment of Error Three

The trial court erred in admitting improper other acts evidence.

{¶2} We find Spoon's arguments unpersuasive and affirm.

Procedural History and Facts

{¶3} Spoon was indicted on two counts: robbery, in violation of R.C. 2911.02, and felonious assault, in violation of R.C. 2903.11. Spoon pleaded not guilty to the charges, and the matter proceeded to a jury trial where the following evidence was presented.

{¶4} On July 29, 2011, at approximately 3:00 a.m., Michael Kimmie was "driving around" in East Cleveland when he encountered 20-year-old Ashley Manning. According to Kimmie, he asked Manning if she was interested in taking off her clothes in exchange for money. The two ultimately returned to Manning's apartment, which she shared with Spoon.

Kimmie testified that Manning "kept trying to talk [him] into staying longer," despite him wanting to leave. While they were inside the apartment for only about "three, four minutes," Spoon returned home.

{¶5} According to Kimmie, as soon as Spoon entered the apartment, Manning's entire attitude and demeanor changed — turning on him and threatening him, at which point, Kimmie "knew [he] was in trouble," believing that the situation "was a planned setup." Next, Spoon walked toward him and searched his pockets, taking his computer thumb drives, keys, and approximately ten dollars. Kimmie testified that Spoon and Manning were dissatisfied with the contents of his pockets, resulting in them wanting to search his car. At this point, Kimmie attempted to flee the apartment but Spoon grabbed him by the shirt, keeping his hand on Kimmie's shirt while they walked down the stairs. Once they got outside, "[Spoon] said he think I'm playing with him. He grab me, lift me up, slammed me on my shoulder."

{¶6} Kimmie further testified that Spoon held him down on the ground while Manning searched his car, finding an envelope with his girlfriend's address. Kimmie testified that Spoon told him that he could leave as long as he came back with money. According to Kimmie, after Spoon and Manning saw his work identification card, they "threatened me and they said they knew my address and where I worked and they could come any time they wanted." Kimmie testified that he was scared, and instead of going home to

get money, he went to the police station, reported the incident, and then sought medical treatment for his shoulder.

{¶7} On cross-examination, Kimmie testified that Manning kept negotiating to do more than just take off her clothes but that he was not interested. Kimmie admitted that he initially lied to the police when reporting the incident; he told police that Manning had approached him and asked for a ride home when, in fact, he was the one who approached Manning and asked her to take off her shirt. He further admitted that Manning had started to perform oral sex on him despite his constant protesting of "no" but that it was interrupted when Spoon arrived home. According to Kimmie, Manning had further threatened that she would report him as having raped her if he did not return with $100.

{¶8} The state also presented the testimony of Manning, who was also charged in connection with the events testified to by Kimmie. Manning pled guilty to a lesser offense of attempted robbery. Manning admitted that she testified in the hopes of getting probation in connection with her plea.

{¶9} According to Manning, she danced for Kimmie but he failed to pay her the full amount that he owed her. He paid her only ten dollars up front but promised her a total of fifteen dollars. While she was dancing for Kimmie with her shirt off, Spoon arrived home, knocking on the door. Manning told Kimmie to "pull up his pants" and "just don't say nothing." She then let Spoon into the apartment, at which point he asked about Kimmie

being in the apartment.   Manning told Spoon that she danced for Kimmie but that he still owed her more money.   She told Spoon this so that he could get the rest of her money.   According to Manning, "Spoon is very intimidating.   He doesn't have to lay his hands on nobody.   All the neighborhood people is scared of him because of how big he is."

{¶10} Manning further testified that Spoon then checked Kimmie's pockets for money but did not find any dollar bills, only change.   She eventually checked Kimmie's car after he represented that there was money in there.   Manning corroborated Kimmie's testimony that Spoon ultimately fought Kimmie when Kimmie attempted to flee.   Manning further testified that Spoon threatened Kimmie if he did not return with money, stating that "[w]e don't want to have to come find you."   Kimmie then gave the "two computer things" as collateral to hold while he offered to leave and return with money.   According to Manning, however, Spoon was merely trying to collect on the debt that Kimmie owed.

{¶11} The state also offered the testimony of East Cleveland detective Kevin Hones, who interviewed Spoon and Manning after warrants had been issued for their arrest.   Det. Hones testified that Spoon waived his right to counsel and agreed to speak about the underlying incident.   Spoon stated that he came home to find Kimmie in his apartment and that Manning was upset because Kimmie failed to pay the full $20 that he promised in exchange for her dancing.   Spoon further stated that Kimmie volunteered to retrieve more money from his car but merely stated that as a ploy to escape.   Spoon admitted to tackling

Kimmie after Kimmie pushed him but that it was Kimmie who offered to go get more money and that Spoon did not prevent him from leaving. Finally, Det. Hones testified that Spoon admitted that Manning has previously brought people up to the apartment for sex with the intent of Spoon robbing them before anything takes place. Spoon stated, however, that "this incident was not one of those times."

{¶12} The jury ultimately found Spoon guilty of the first count of robbery and the lesser included offense of simple assault under the second count. The trial court sentenced Spoon to two years in prison.

{¶13} Spoon appeals, raising three assignments of error.

<u>Sufficiency and Weight of the Evidence</u>

{¶14} In his first and second assignments of error, Spoon argues that the state failed to present sufficient evidence to support the robbery conviction and that the conviction is against the manifest weight of the evidence. We disagree.

{¶15} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Conversely, in reviewing a claim challenging the manifest

weight of the evidence, the question to be answered is "whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *Leonard*, 104 Ohio St.3d at ¶ 81. This review entails the following:

> we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.) *Id.*

{¶16} Spoon was convicted of robbery, in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another."

{¶17} Spoon contends that "the record more reflects a failed deal with a prostitute than a robbery." Spoon does not challenge the sufficiency of the evidence as to the underlying theft offense. Instead, he argues that the state failed to produce evidence that Spoon "inflicted or attempted to inflict physical harm" to support the robbery conviction. We disagree.

{¶18} Here, Kimmie's testimony established that Spoon took $10 from him, and then he proceeded to escort Kimmie outside to search Kimmie's car for additional money. Prior to reaching the car and after Kimmie attempted to flee, Spoon slammed Kimmie on the

ground, apparently believing that Kimmie was not taking him seriously. Further, Manning corroborated Kimmie's testimony that Spoon physically searched Kimmie's pockets and ultimately fought Kimmie when Kimmie attempted to flee. Construing this evidence in a light most favorable to the state, we find that the state met its burden of proof and established that Spoon inflicted physical harm in attempting or committing a theft offense.

{¶19} Relying on the same arguments advanced in his sufficiency challenge, Spoon contends that the jury's verdict should not stand. We disagree. We cannot say that this is the exceptional case where the jury "lost its way." Indeed, Kimmie's testimony, if believed, revealed that Manning lured Kimmie to her apartment with the expectation of Spoon arriving for the purpose of robbing Kimmie. Even if the jury did not believe Kimmie and found Manning's account of the events more credible, her testimony merely revealed that she believed Spoon was justified in his actions of trying to recover on a debt owed to her. But the "enforcement on a debt" does not negate the elements of robbery — all of which were proven by the state in this case.

{¶20} The first and second assignments of error are overruled.

Other Acts Evidence

{¶21} In his final assignment of error, Kimmie argues that the trial court abused its discretion in allowing East Cleveland detective Kevin Hones to testify as to Spoon engaging in this same conduct on an earlier occasion. He contends that such evidence was overly prejudicial, offered solely to prove that Spoon acted in conformity with his prior bad conduct. The state counters that the evidence was properly admitted to demonstrate Spoon's motive and intent.

{¶22} Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶23} This rule is consistent with R.C. 2945.59, which states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶24} "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility is strict." *State v. Broom*, 40

Ohio St.3d 277, 281-282, 533 N.E.2d 682 (1988). But if the enumerated matter is a material issue at trial and the other acts evidence tends to show that matter by substantial proof, then the evidence of the other acts may be admissible for that limited purpose. *State v. Wightman*, 12th Dist. No. CA2006-12-045, 2008-Ohio-95, ¶ 26, citing *Broom* at 281-282; *see also State v. Lowe*, 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616. Like all evidence, however, other acts evidence is still subject to the limitations provided in Evid.R. 402 and 403; therefore, the proffered evidence must be relevant and its probative value must outweigh its potential for unfair prejudice. *State v. Gaines*, 8th Dist. No. 82301, 2003-Ohio-6855, ¶ 16.

**{¶25}** Specifically, Spoon challenges the following testimony that the state offered in examining Det. Hones on direct:

[Det. Hones]: I then made a statement to Mr. Spoon through different CI's I had —

[Defense Counsel]: Objection.

The Court: It's overruled.

[Det. Hones]: I made the statement to Mr. Spoon —

The Court: You can just tell us what your statement was.

[Det. Hones]: The statement was, I said, "We have received information that you and Miss Manning have performed this before where you've allowed people up to Miss Manning's room for sex. You come in before the sex is performed, you're

the male in the apartment."   Mr. Spoon —

[Defense Counsel]: Objection

The Court:                    It's overruled.

{¶26} We cannot say that the trial court abused its discretion in allowing the state to introduce this evidence for the sake of proving Spoon's motive.   Contrary to Spoon's assertion, we do not agree that "the jury heard this other conduct and could only have understood it as proof of [Spoon's] bad character and that he had been involved in criminal conduct previously."   Here, the defense took the position that Manning was not expecting Spoon to come home, that Kimmie had essentially fabricated most of the story for the sake of protecting himself, and that Spoon coincidentally came home at the time that he did.   Indeed, while Manning's account of the events painted a picture of Spoon merely assisting on a payment due, Kimmie's testimony portrayed a much different account.   Thus, evidence of Manning and Spoon conspiring and luring people to the apartment in the past was relevant to the issue of motive and to negate the defense's theory.   Further, the trial court specifically instructed the jury that it could only consider the evidence for the purpose of deciding Spoon's motive and intent and not as character evidence.

{¶27} The final assignment of error is overruled.

{¶28} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
LARRY A. JONES, SR., J., CONCUR